OPINION OF THE COURT
Ira Gammerman, J.
In this summary proceeding, petitioner and respondent hotly contest the issue of paramount rights to a closet. Both *128 have moved for summary judgment.
Petitioner commenced the proceeding pursuant to RPAPL 713 (subd 7) to terminate respondent’s alleged license to use a large closet in the service hallway of petitioner’s premises, adjacent to respondent’s penthouse apartment. Conspicuous service was affected by affixing a copy of the petition and notice of petition to the closet door and mailing a copy to respondent’s residential address. The court finds this method of service to be in accordance with RPAPL 735. The court rejects as spurious respondent’s contention that mailing the second petition to respondent’s penthouse address constituted an admission that the closet was part of the penthouse leasehold.
Respondent argues that he acquired rights to the closet arising from his lease of the penthouse apartment and that therefore he has a right to continue using it, subject to the terms and conditions of that lease. Respondent bases this allegation on a floor plan he received from an unspecified person on an unspecified date.
Petitioner states that it never gave respondent such a floor plan. Further, it alleges and the court finds that the plan does not indicate that the closet is part of the leased premises. Nor does the lease expressly convey any interest in the closet to respondent. On the contrary, section 12 of the lease provides that: “Neither landlord nor landlord’s agent have made any representations or promises with respect to the physical condition of the building, the land upon which it is erected or the demised premises, or any other matter or thing affecting or related to the premises except as herein expressly set forth and no rights, easements or licenses are acquired by implication or otherwise”. (Emphasis added.)
That the closet was not part of the leased premises is further evidenced by the fact that a tenant in the adjacent penthouse was using it for storage when petitioner and respondent executed their lease. Respondent’s neighbor continued using the closet two years after respondent took occupancy of his penthouse.
Alternatively, respondent claims he has an easement by estoppel, arising from permission he allegedly received *129 from petitioner to continue using the closet and to install a washer and dryer in it. Petitioner denies this and further alleges that although respondent, like the other tenants, was allowed to use the closet for storage space, that this permission was clearly revoked sometime in 1979.
A license is a “personal, revocable and non-assignable privilege, conferred either by writing or paroi, to do one or more acts upon land without possessing any interest therein” (Greenwood Lake & Port Jervis R. R. Co. v New York & Greenwood Lake R. R. Co., 134 NY 435, 440). In contrast, an easement is “a permanent interest in the land, for some specified period, amounting to an estate in the land, which is assignable, is irrevocable, and gives a right at all times to enter and remain in possession, during its continuance” (Pierrepont v Barnard, 6 NY 279, 288).
An easement by estoppel may arise if an owner of land, through specific representations, leads another to reasonably believe a permanent, alienable interest in real property has been created, and if in reliance on such representations, the other makes permanent or valuable improvements on the land. To invoke the doctrine of estoppel, it must be shown that it would be inequitable to allow the owner to interrupt the enjoyment of the easement (see 17 NY Jur, Easements and Licenses, § 21; Olin v Kingsbury, 181 App Div 348, 354).
Assuming that respondent’s claims are true, he has failed to allege evidentiary facts necessary to establish an easement by estoppel. Respondent does not indicate that petitioner made any specific representations to him which led him to believe he was being given an irrevocable interest in the closet.
Respondent’s reliance on the case of Lemkin v Guide (25 Misc 2d 144), is ill founded. In that case, the defendant landlord’s predecessor dedicated a strip of land to the village of Hempstead in a written instrument, agreeing to refrain from erecting any buildings on the property other than a medical center and to further maintain the open area as a park for 10 years. After public hearings, the dedication was accepted by the village and incorporated into public records. Thereafter, the property was sold. The *130 contract of sale explicitly acknowledged and incorporated the above restrictions on the land. Defendant landlord, seeking potential tenants, stated both orally and in newspaper advertisements that “the area in front of the building would be maintained as a park-like or open area” (Lemkin v Guide, supra, at p 151). These representations were major factors in inducing the plaintiff, a physician, to relocate his practice from a highly commercial location to the medical center, and to enter into a 10-year lease.
Subsequently, defendant’s attorneys persuaded the village counsel that the dedication was invalid as an act of zoning by contract and the dedication was rescinded. When defendant sought to build on the open strip, plaintiff argued that he held a valid easement barring such construction.
The court found that plaintiff had both an implied easement by necessity and an easement by estoppel. Elements of easement by estoppel were: defendant’s repeated representations to plaintiff, to other potential tenants, and to the general public that the land would be maintained as a park; plaintiff’s reasonable reliance on those representations; and, finally, the inconvenience and expense incurred by plaintiffs in relocating to defendant’s premises. In granting plaintiff equitable relief, the court barred construction for the balance of his 10-year term.
The allegations of respondent in the instant case are pale by comparison. With respect to the landlord’s representations, respondent merely alleges that: “After Mrs. Solomon, [tenant of the adjacent penthouse], relinquished her rights to the room, and with full knowledge and consent of Mr. Steve Katz, Mr. Mike Dworkin and other building employees and personnel, and in reliance upon the representations made by said persons of exclusive use of said bathroom, I changed my position by installing a washer and drier, painting the bathroom twice, and removed the sink and toilet.” Respondent could not have concluded, as a reasonable person, that the permission and consent of the landlord constituted conveyance of a permanent interest in realty of any significant duration in time. In Lemkin (supra) the landlord clearly indicated to the tenant an intent to impair its rights of ownership for a period of 10 *131 years. In the instant case, no impairment of possessory rights in futuro could reasonably be inferred. The landlord’s knowledge of, and consent to, respondent’s occupancy of the closet is entirely consistent with a grant of a license, revocable at will.
Finally, the Lemkin case is distinguishable inasmuch as the respondent in the instant case expended little time and money as a result of his assumption that he had been given an easement. The washing machine presently in the closet was formerly installed within the four walls of the respondent’s penthouse. The minimal effort, required to wheel the machine back to its original site cannot be compared with a physician’s relocation of a well-established practice.
It has been previously held that construction of a 90-foot long stone wall (Crosdale v Lanigan, 129 NY 604) would not defeat a landowner’s right to regain possession. Accordingly, it does not seem unduly burdensome to require respondent to return his washer and dryer to their original installation sites.
The court, therefore, finds that petitioner is entitled to a judgment of possession. Petitioner’s motion for summary judgment is granted, and respondent’s motion is denied. Execution of the warrant is stayed 30 days.